LUKENS LAW GROUP
WILLIAM M. LUKENS (SBN 037196)
JENNIFER L. JONAK (SBN 191323)
One Maritime Plaza, Suite 1600
San Francisco, CA 94111
Telephone: (415) 433-3000
Facsimile: (415) 781-1034

Attorneys for Plaintiffs Robert Granum
And William Meredith

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GRANUM, an individual; WILLIAM MEREDITH, in his capacity as trustee of the Granum 1983 Children's Trust.<br><br>Plaintiffs,<br><br>v.<br><br>BDO SEIDMAN LLP, a limited liability partnership; PROSKAUER ROSE LLP, a limited liability partnership; GRAMERCY ADVISORS, LLC, a Delaware limited liability company; and DOES ONE THROUGH THIRTY, inclusive;<br><br>Defendants. | Case No. C 07-06448 CRB<br><br>**COMPLAINT FOR SECURITIES FRAUD, FRAUD, UNJUST ENRICHMENT, UNFAIR BUSINESS PRACTICES, NEGLIGENCE AND BREACH OF FIDUCIARY DUTY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs hereby alleges as follows:

**JURISDICTION AND VENUE**

1.  This is an action for damages arising out of defendants' violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, as well as fraud, breach of fiduciary duty, unjust enrichment and unfair business practices.

2.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the securities fraud claim raises a question of federal law.

3.  Venue is proper in the Northern District of California pursuant to

COMPLAINT

28 U.S.C. § 1965(a) because the defendants are found, reside and/or transact affairs in this District; pursuant to 18 U.S.C. § 1965(b) because the ends of justice require that the parties residing in any other district be brought before this Court; pursuant to 28 U.S.C. § 1291(b) because a substantial part of the events or omissions giving rise to this action occurred in this District; and/or pursuant to 28 U.S.C. § 1391(b) because one or more of the defendants is found in and is subject to personal jurisdiction in this District.

## PARTIES

4.   Plaintiff Robert Granum is an individual and a United States citizen residing at all relevant times in the State of California, within the Northern District of California.

5.   The Granum 1983 Children's Trust is a trust created for the benefit of Mr. Granum's children. The trustee of said trusts is William Meredith, a United States citizen residing at all relevant times in the State of California, within Northern District of California. Mr. Meredith is suing in his capacity solely as trustee of said trusts and will be referred to herein as "Trust." Mr. Granum and the Trust will be referred to collectively as "Plaintiffs."

6.   Defendant BDO Seidman LLP ("BDO") is a limited liability partnership organized and existing under the laws of the State of New York with its principal place of business in Chicago, Illinois.

7.   Defendant Proskauer Rose LLP ("PR") is a limited liability partnership organized under the laws of the State of New York with its principal place of business in New York.

8.   Defendant Gramercy Advisors LLC is a Delaware Limited Liability Company with its principal place of business located in Connecticut. On information and belief, it is involved in banking and investment transactions throughout the United States, including the Northern District of California. It purposefully established contacts with California in participating in the tax shelter sold to Plaintiffs, as described below.

9.   Plaintiffs are uncertain of the true names and capacities of certain

individuals or entities that may be liable for the damages alleged herein and therefore sues them by fictitious names of Does ONE through THIRTY. Plaintiffs will amend this complaint by asserting their true names, capacities and appropriate charging allegations when they are ascertained.

## GENERAL ALLEGATIONS

10. Plaintiffs bring this action against defendants for their role in promoting and implementing tax strategies that the federal government has determined to be abusive and unregistered tax shelters, and inducing Plaintiffs to purchase and utilize one such tax shelter on the premise that the transaction was completely lawful. Plaintiffs' transaction has been rejected by federal and state tax agencies, as defendants knew it would be, but due to defendants' misconduct alleged herein, Plaintiffs were induced into purchasing it, not knowing that it was a sham transaction or an abusive tax shelter.

11. In or about 2001, Mr. Granum was given a presentation by Paul Shanbrom of BDO. The presentation took place in San Jose, California and was for an investment strategy, but unbeknownst to Plaintiffs, turned out instead to be an abusive tax shelter which the IRS has identified as illegal in its Notices 1999-59 and 2000-44 ("Shelter"). At the time that Plaintiffs considered and entered the Shelter, however, it was simply marketed to them as a sound investment strategy that involved distressed debt and provided legal tax benefits. Plaintiffs paid over $1 million in fees for the Shelter, not including additional monies charged as ongoing transaction costs or kickback fees.

12. All documentation for the Shelter was presented to Plaintiffs in the Northern District of California and negotiated and executed in the Northern District of California. This documentation included documents and information presented by defendants, including a favorable law firm opinion letter, which documents contributed to the appearance and semblance of the Shelter as a legitimate investment strategy.

13. Plaintiffs, however, were misinformed and misled about the nature and soundness of the Shelter, which in fact, had been determined by the IRS to be an abusive and illegal tax shelter, and which was prohibited by IRS rulings at the time the

Shelter was marketed to Plaintiffs. Plaintiffs have been assessed back taxes, interest and penalties by the Internal Revenue Service ("IRS") as a result. Plaintiffs are informed and believe and therefore allege that defendants knew that the Shelter was a sham that would not be recognized by federal or state taxing authorities for income tax purposes, yet facilitated this strategy and helped induce them to purchase it in order to generate enormous fees for themselves. Plaintiffs reasonably relied on the misrepresentations and omissions of the defendants, and had Plaintiffs suspected that the transaction was a sham or an abusive tax shelter by the IRS, they would never have entered into it.

14. On information and belief, defendants helped create, coordinate, promote and facilitate tax shelters, including the one sold to Plaintiffs, in order to generate enormous fees. Defendants also helped structure, set up and/or opine as to limited liability companies that were formed for the express purpose of tax shelter strategies, despite the IRS' determination that such limited liability companies were "shell" companies created solely to further fraudulent tax shelter activity.

15. On information and belief, defendants sold numerous illegal tax shelters to other clients and directed their tax shelter activities complained of herein toward residents of California through BDO, which at all relevant times had an office at all relevant times that generated referrals for tax shelter clients, located in San Jose in the Northern District of California Defendants knew that the sham tax shelters would have an impact on the clients' state tax returns, as well as federal tax returns. On information and belief, defendants knew in these transactions that the clients were California residents based on paperwork containing detailed information about the taxpayer client. As a result, defendants knew that the transactions, which they structured to "shelter" taxes, would impact these California residents' state income taxes and have a substantial impact on California tax returns and revenues paid to the Franchise Tax Board of the State of California.

16. Plaintiffs had no knowledge that the Shelter sold to them was an abusive tax shelter or would be characterized as such. This is because, in addition to the

COMPLAINT
4

documentation and information provided to Plaintiffs about the Shelter which made it appear to be a sound investment strategy with lawful tax benefits, Plaintiffs received an opinion letter from PR which opined that Plaintiffs' transaction had lawful tax benefits that were likely to be recognized by the IRS. On information and belief, PR provided similar opinion letters in boilerplate form to numerous other taxpayer clients. On information and belief, the provision of opinion letters for these tax shelter transactions were a substantial source of revenue to PR. Plaintiffs are informed and believe and therefore allege that defendants were all aware of PR's vested interest in the promotion of tax shelters, including the one sold to Plaintiffs, yet never advised Plaintiffs that the transaction sold to Plaintiff had been marketed to others and that the opinion letters were mass generated. In fact, Plaintiffs were specifically advised that the strategy sold to them was legal, distressed debt investment, and as a result, Plaintiffs did not know until they were audited years later that the strategy was a tax shelter, was an illegal tax shelter and was mass marketed to others. On information and belief, Defendants knew this and yet failed to disclose this to Plaintiffs.

17. Based upon defendants' marketing and documentation, which gave the Shelter the false semblance of a legitimate and legal business investment, omitting any mention that it was actually a transaction already listed as an abusive tax shelter or that it would be considered illegal by the IRS, Plaintiffs signed, in San Jose, California, boilerplate documentation presented to them in connection with the Shelter. This paperwork was voluminous and highly technical, and it was presented to Plaintiffs for signature without any discussion or opportunity to negotiate any of the content. On information and belief, all of this paperwork was created by defendants with the express intention of promoting and inducing Plaintiffs to enter into a fraudulent strategy that defendants designed to avoid the payment of lawfully due taxes. The contracts contained therein had an illegal purpose and are therefore void for illegality.

18. At no time did any of the defendants disclose to Plaintiffs that they had been active in promoting, marketing, developing and/or facilitating other transactions

COMPLAINT
5

that were listed by the IRS as abusive and illegal tax shelters, nor did they disclose that the very transaction presented to Plaintiffs was an abusive tax shelter that would be disallowed by the IRS.

19. Plaintiffs reasonably relied on the tax advice, investment advice, legal advice and professional services rendered by defendants.

20. Defendants knew and/or had reason to know at the time Plaintiffs purchased the Shelter, and in developing, promoting and/or facilitating the Shelter, that the Shelter would be considered by the IRS as a tax shelter within the meaning of Code Section 6111(c)(1), and that they were illegally promoting, and aiding and abetting the promotion, of an unregistered tax shelter.

21. Prior to the time that the Shelter was promoted to Plaintiffs, the IRS had issued Notice 1999-59, published on December 27, 1999, entitled "Tax Avoidance Using Distributions of Encumbered Property," and warning that the IRS had become aware of certain types of transactions "being marketed to taxpayers for the purpose of generating tax losses." IRS Notice 1999-59 warned that such transactions consisted of a "contrived series of steps" by which "taxpayers claim tax losses for capital outlays that they have in fact recovered." IRS Notice 1999-59 stated that such "artificial losses" are not allowable for federal income tax purposes.

22. On September 5, 2000, the IRS published Notice 2000-44, entitled "Tax Avoidance Using Artificially High Basis," addressing similar transactions to Notice 1999-59. Notice 2000-44 described a similar inflated basis transaction, concluding that "purported losses from these transactions (and from any similar arrangements designed to produce noneconomic tax losses by artificially overstating basis . . . ) are not allowable as deductions for federal income tax purposes."

23. As a result of IRS Notices 1999-59 and 2000-44, defendants knew and/or had reason to know that the Shelter was not a legitimate or legal means for declaring capital losses for income tax purposes for Plaintiffs. Among other things, defendants knew that the Shelter was not the customized distressed debt transaction that

had been marketed to him, but was, in fact, a transaction that had already been listed by the IRS as an abusive tax shelter for almost two years. Despite this, defendants failed to inform Plaintiffs of the illegality of the Shelter, or of its boilerplate nature, and, in fact, promoted and provided documentation that made it appear to the contrary.

24. Defendants knew and/or had reason to know that their promotion and facilitation of the Shelter, by providing documentation which purported to reinforce the allowance of tax benefits obtained through participation in the Shelter and by facilitating or providing a gross valuation overstatement concerning the tax and investment benefits of the Shelter, constituted a violation of I.R.C. § 6700.

25. Plaintiffs' tax returns have since been audited by the IRS, with the IRS taking the position that losses from the Shelter are not allowable for income tax purposes. The State of California Franchise Tax Board has also disallowed the use of losses from the Shelter for state income tax purposes. On information and belief, defendants knew and anticipated that the fraudulent tax shelters that they promoted, including Plaintiffs' Shelter, would have an impact on federal as well as state – California – tax returns, depriving those governments of substantial revenues.

## FIRST CAUSE OF ACTION

### Securities Fraud

### (Against All Defendants)

26. Plaintiffs reassert and incorporate by reference all of the allegations herein in their entirety and further alleges:

27. Defendants, by use of the means and instrumentalities of interstate commerce and by use of the mails, misrepresented and omitted to state material facts in connection with the purchase or sale of securities, namely that the Shelter would not be recognized as a legitimate transaction by federal and state taxing authorities for income tax purposes; that the Shelter had been expressly listed by the IRS as an abusive tax shelter for almost two years prior to marketing and selling it to Plaintiffs; that the opinion letters provided to Plaintiffs, and other clients, were boilerplate letters, that had been

provided to numerous other tax shelter clients; that the law firms providing such opinion letters were not disinterested; that the law firms providing opinion letters and defendants had material conflicts of interest that were never disclosed; and that the defendants were basing their advice solely on their desire to collect large fees from the completion of the Shelter. In so doing, defendants acted knowingly and purposefully, or with deliberate recklessness, deceiving Plaintiffs in order to induce them to purchase the Shelter and take tax losses that they knew to be improper.

28.  Defendants also concealed from Plaintiffs their history of involvement with tax shelters, knowing that it would impede their marketing of the Shelter and collection of enormous fees therefrom. BDO, for example, sold numerous abusive tax shelters that it called its "super product category." These were marketed through BDO's "Tax Sales Executive Group," later renamed the "Tax Solutions Group." BDO distributed a memo describing these tax shelters as "TAX $ELLS!" Starting in 2000, the IRS began investigating BDO and issuing subpoenas to it. *See United States v. BDO Seidman LLP* (Civil Action No. 02-cv-4822) (the "BDO proceeding"). None of this was ever disclosed to Plaintiffs.

29.  BDO also failed to disclose that it was relying so heavily on tax shelter promotions and fees, as of May 5, 2000, according to an internal BDO memorandum produced in the BDO proceeding, BDO had already generated over $77 million in revenues from tax shelters and expected to reach $100 million by the end of 2000. Exhibit A, p. 8 *et seq.*

30.  The government's investigation uncovered that BDO worked with Gramercy to market prepackaged distressed debt tax shelter transactions and that "these transactions appear to have been engaged in solely for the purpose of tax avoidance." According to documents in the BDO proceeding, Gramercy appears to have engaged in more than two dozen distressed debt tax shelters.

31.  PR also has a history of involvement with tax shelters, as well as helping to co-promote them with BDO. Government investigations of tax shelters showed

1  that PR was selected by BDO to be an opinion writer for other tax shelters known as
2  spread option transactions. Attached to this Complaint is a copy of a reply brief filed by
3  the government in the BDO proceeding describing PR's role. Exhibit B, p. 5.

4      32.    None of the above was ever disclosed to Plaintiffs, and in fact,
5  defendants marketed and promoted the Shelter to Plaintiffs as completely legal and
6  legitimate.

7      33.    Plaintiffs relied on the above material misrepresentations and
8  omissions of material fact in purchasing the Shelter, and it was reasonably foreseeable that
9  Plaintiffs would rely on said misrepresentations and omissions of material fact in entering
10 into the Shelter and claiming losses from it on income tax returns.

11     **34.**    By reason of the foregoing, defendants have violated Section 10(b)
12 of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. §§ 240.10b-5, 10b5-1,
13 10b5-2.

14     35.    As a direct and proximate result of the foregoing conduct by
15 defendants, Plaintiffs have been damaged in the amount of approximately $1.3 million
16 dollars of fees paid to defendants for the Shelter; interest and penalties payable to the IRS
17 and/or State of California as a result of the disallowance of tax losses claimed from the
18 Shelter; the loss of reasonably expected income from the use of the funds paid by
19 Plaintiffs for and invested in the Shelter; the loss of use of monies paid as taxes to the IRS
20 and/or State of California as a result of the Shelter; foregoing legitimate tax savings
21 opportunities; the attorneys' fees and other costs incurred by Plaintiffs as a result of
22 defendants' conduct and the investigation thereto; and such other damages as Plaintiff has
23 sustained and will continue to sustain in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**Fraud**

**(Against All Defendants)**

27     36.    Plaintiffs reassert and incorporate by reference all of the foregoing
28 general allegations in their entirety and further allege:

37.     In order to induce Plaintiffs to pay millions of dollars in fees for the Shelter, defendants made numerous knowingly false affirmative representations and intentional omissions of material fact to Plaintiffs, including, but not limited to: creating documentation to make the Shelter appear to be a legitimate business strategy with lawful tax benefits; creating documentation to make the Shelter appear to be a customized distressed debt transaction created specifically for Plaintiffs, when, in fact, it was an illegal strategy mass-marketed to numerous other clients and taxpayers; concealing from Plaintiffs the knowledge that PR's opinion letters had been mass-generated; and concealing from Plaintiffs their knowledge that the IRS would not approve losses from the Shelter transactions for income tax purposes, because it had been listed as an abusive tax shelter almost two years prior to defendants' selling it to Plaintiffs.

38.     The above affirmative representations, or material and intentional omissions or concealments of fact, made by defendants were false when made and defendants knew them to be false when made with the intention that Plaintiffs rely upon them in entering into the Shelter, so that the defendants could reap enormous fees from the transaction.

39.     As a direct and proximate result of the foregoing conduct by defendants, Plaintiffs have been damaged in the amount of approximately $1.3 million dollars of fees paid to defendants for the Shelter; interest and penalties payable to the IRS and/or State of California as a result of the disallowance of tax losses claimed from the Shelter; the loss of reasonably expected income from the use of the funds paid by Plaintiffs for and invested in the Shelter; the loss of use of monies paid as taxes to the IRS and/or State of California as a result of the Shelter; foregoing legitimate tax savings opportunities; the attorneys' fees and other costs incurred by Plaintiffs as a result of defendants' conduct and the investigation thereto; and such other damages as Plaintiff has sustained and will continue to sustain in an amount to be determined at trial.

40.     **Plaintiffs** are informed and believe and on that basis allege that defendants' conduct was willful, malicious, reckless, wanton and in knowing disregard of

COMPLAINT
10

their professional obligations, such that Plaintiffs are entitled to recover exemplary damages against defendants in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

#### Unjust Enrichment

#### (Against All Defendants)

41. Plaintiffs reassert and incorporate by reference all of the foregoing general allegations in their entirety and further allege:

42. Plaintiffs paid approximately $1.3 million in fees for the Shelter, not including other transactional and/or kickback fees.

43. Despite this payment, defendants failed to provide Plaintiffs with a legitimate business investment with lawful tax benefits, as promised, instead concealing and misrepresenting material facts about the Shelter as described herein.

44. As a direct and proximate result of the foregoing, defendants have been unjustly enriched by having received the benefit of fees for a transaction that was not as represented to Plaintiffs and that defendants knew or should have known to be illegal, and having unjustly retained said fees paid by Plaintiffs at the expense of Plaintiffs.

### FOURTH CAUSE OF ACTION

#### Unfair Business Practices, Cal. Bus. & Prof. Code § 17200

#### (Against All Defendants)

45. Plaintiffs reassert and incorporate by reference all of the foregoing general allegations in their entirety and further allege:

46. The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code §17200 *et seq.*

47. Defendants have violated the Unfair Business Practices Act by engaging in the unlawful, unfair and/or fraudulent business acts and/or practices alleged

herein alleged herein, including the promotion, facilitating, concealment and/or sale of tax shelters that they knew would be disallowed by the IRS, and would be likely to deceive Plaintiffs, as well as numerous other individuals and members of the public of the State of California, thereby depriving the public of millions of dollars of tax monies and deceiving taxpaying members of the public into participating in what the IRS deems an abusive transaction.

48.     As a direct and proximate result of the foregoing conduct by defendants, Plaintiffs have been damaged in the amount of approximately $1.3 million dollars of fees paid to defendants for the Shelter; interest and penalties payable to the IRS and/or State of California as a result of the disallowance of tax losses claimed from the Shelter; the loss of reasonably expected income from the use of the funds paid by Plaintiffs for and invested in the Shelter; the loss of use of monies paid as taxes to the IRS and/or State of California as a result of the Shelter; foregoing legitimate tax savings opportunities; the attorneys' fees and other costs incurred by Plaintiffs as a result of defendants' conduct and the investigation thereto; and such other damages as Plaintiff has sustained and will continue to sustain in an amount to be determined at trial.

49.     The Unfair Business Practices Act provides for restitution for violations. Plaintiffs thereby request that this Court restore all monies and fees paid by them related to the Shelter.

## FIFTH CAUSE OF ACTION

### Negligence

### (Against BDO and PR)

50.     Plaintiffs reassert and incorporate by reference all of the foregoing general allegations in their entirety and further allege:

51.     As professional investment and legal advisers, particularly with a specialty in tax issues, defendants owed Plaintiffs a duty of care to provide independent, unbiased, objective investment and legal advice with respect to the Shelter and its claimed tax benefits. Defendants owed Plaintiffs the duty to provide that investment and legal

advice in good faith in accordance with accepted professional standards. Defendants violated this duty of care by the acts alleged herein, including, namely, by concealing the fact that the Shelter was an illegal tax shelter that had been listed as an abusive transaction by the IRS for almost two years as of the time it was sold to Plaintiffs.

52. Plaintiffs relied on defendants and their representations that the Shelter was legitimate and completely legal.

53. As a direct and proximate result of the foregoing conduct by defendants, Plaintiffs have been damaged in the amount of approximately $1.3 million dollars of fees paid to defendants for the Shelter; interest and penalties payable to the IRS and/or State of California as a result of the disallowance of tax losses claimed from the Shelter; the loss of reasonably expected income from the use of the funds paid by Plaintiffs for and invested in the Shelter; the loss of use of monies paid as taxes to the IRS and/or State of California as a result of the Shelter; foregoing legitimate tax savings opportunities; the attorneys' fees and other costs incurred by Plaintiffs as a result of defendants' conduct and the investigation thereto; and such other damages as Plaintiff has sustained and will continue to sustain in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

**Breach of Fiduciary Duty**

**(Against BDO and PR)**

54. Plaintiffs reassert and incorporate by reference all of the foregoing general allegations in their entirety and further allege:

55. As professional investment and legal advisers, particularly with a specialty in tax issues, defendants owed Plaintiffs a duty to deal with them honestly, fairly, and with the utmost and highest trust and good faith, and to refrain from engaging in conduct that would take advantage of them, or create a conflict of interest, or benefit from the relationship to Plaintiffs' disadvantage. This included the duty to provide Plaintiffs with independent, unbiased, objective investment and legal advice with respect to the Shelter and its claimed tax benefits. Defendants violated this duty of care by the acts

alleged herein, including without limitation, their representations and omissions regarding the legality of the Shelter for income tax purposes.

56. As a direct and proximate result of the foregoing conduct by defendants, Plaintiffs have been damaged in an amount exceeding $1 million dollars of fees paid to defendants for the Shelter; interest and penalties payable to the IRS and/or State of California as a result of the disallowance of tax losses claimed from the Shelter; the loss of reasonably expected income from the use of the funds paid by Plaintiffs for and invested in the Shelter; the loss of use of monies paid as taxes to the IRS and/or State of California as a result of the Shelter; foregoing legitimate tax savings opportunities; the attorneys' fees and other costs incurred by Plaintiffs as a result of defendants' conduct and the investigation thereto; and such other damages as Plaintiff has sustained and will continue to sustain in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against defendants as follows:

1. Against all defendants, joint and severally, for actual damages in an amount to be proven at trial.

2. Against all defendants, an injunction enjoining defendants from engaging in the same types of conduct or endeavor alleged herein; devising, offering and soliciting clients for, or promoting, tax shelters; preparing tax returns involving tax shelters; providing legal advice promoting tax shelters; soliciting clients for, referring clients to, or engaging in marketing or business development programs, with each other; sharing fees or income with each other; and otherwise for the purpose of frustrating or defeating the collection of legitimate taxes;

3. Against all defendants, a declaration that defendants are jointly and severally liable to Plaintiffs for any and all commissions paid, interest, and penalties assessed in the past or future against them by the IRS and/or California tax authorities resulting from Plaintiffs' participation in the Shelter, for the loss of use of funds to

COMPLAINT
14

Plaintiffs, and for all professional fees incurred by Plaintiffs in the past or the future to rectify defendants' wrongdoing;

      4. Against all defendants, jointly and severally, for attorneys' fees and costs to the maximum extent provided by any applicable provision of law;

      5. Against all defendants for restitution of all fees and commissions paid by Plaintiffs; and

      6. For such other and further relief as the Court may deem just or proper.

Dated: December 21, 2007

      LUKENS LAW GROUP
      WILLIAM M. LUKENS (State Bar No. 037196)
      JENNIFER L. JONAK (State Bar No. 191323)

By: _____
      Attorneys for Plaintiffs

**JURY TRIAL IS HEREBY DEMANDED**